**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **TAMMY D. RIFFE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:06-01028** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on the Plaintiff's Motion for Remand (Doc. No. 13.) and the parties' cross-Motions for Judgment on the Pleadings. (Doc. Nos. 11 and 12.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Doc. Nos. 4 and 5.)

The Plaintiff, Tammy D. Riffe (hereinafter referred to as "Claimant"), filed an application for SSI on October 7, 2003 (protective filing date), alleging disability as of September 15, 2003, due to asthma, osteoporosis, arthritis and bursitis, stomach problems, back strain, depression, anxiety, panic attacks, and neck and a wrist sprain. (Tr. at 60, 68, 87, 88-90.) The claim was denied initially and upon reconsideration. (Tr. at 60-62, 68-70.) On December 15, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 71.) The hearing was held on February 7, 2006, before the Honorable Karen B. Peters. (Tr. at 24-57.) By decision dated May 9, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-23.) The ALJ's decision became the final decision of the Commissioner on October 20, 2006, when the Appeals Council

denied Claimant's request for review. (Tr. at 5-7.) On December 7, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace),

3

we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant suffered from degenerative disc disease of the lumbar spine, osteoporosis, chronic obstructive pulmonary disease, asthma, GERD, anxiety, depression, and borderline intellectual functioning, which were severe impairments. (Tr. at 17.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18.) The ALJ then found that Claimant had a residual functional capacity for work at the light level of exertion, as follows:

> [S]he has the residual functional capacity to perform work-related activities with pushing, pulling, lifting, and/or carrying up to 20 pounds occasionally and up to 10 pounds frequently; sitting, standing, and/or walking about six hours each during an eight-hour workday; occasional balancing, stooping, kneeling, crouching, and/or crawling; frequent climbing; reaching, handling, fingering, feeling; with avoidance or continued interaction with unfamiliar people and restriction to simple, unskilled tasks with no need for continuous concentration or persistence.

(Tr. at 21.) At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 21.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a kitchen helper and laundry worker, at the light

level of exertion. (Tr. at 21.) On this basis, benefits were denied. (Tr. at 21-22.)

Scope of Review

      The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

      A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

      Claimant was born on October 22, 1966, and was 39 years old at the time of the administrative hearing. (Tr. at 21, 88.) Claimant had a ninth grade, or limited, education. (Tr. at 21-22, 31.) Claimant had not performed any past relevant work. (Tr. at 21.)

The Medical Record

      The Court has reviewed all the evidence of record, including the medical evidence, and will

discuss it below in relation to Claimant's arguments.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in not finding that Claimant met the criteria of Listings §§ 12.05C and 12.05D. (Doc. No. 11 at 10-11.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Doc. No. 12 at 4-7.)

"The Listing of Impairments . . . describes, for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. §§ 404.1525(a), 416.925(a) (2006); <u>see</u> <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990). "For a claimant to qualify for benefits by showing that h[er] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." <u>See</u> <u>id.</u> at 531 (emphasis in original).

Section 12.05 of the Listing of Impairments provides criteria for determining whether an individual is disabled by mental retardation or autism. "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2006). The required level of severity for Listing 12.05 is satisfied when any one of the four following requirements is satisfied:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

   B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

   C. A valid verbal, performance, or full scale IQ of 60 through 70 and a
physical or other mental impairment imposing an additional and significant work-
related limitation or function;

OR
   D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting
in at least two of the following:
   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation, each of extended duration.

The Fourth Circuit has held that a claimant's additional "severe" impairment qualifies as a

significant work-related limitation for the purpose of listing § 12.05C. Luckey v. U.S. Dept. of

Health & Human Serv., 890 F.2d 666 (4th Cir. 1989) (per curiam).  A "severe" impairment is one

"which significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R.

§ 416.920(c) (2004). In Luckey, the Court ruled that:

   Luckey's inability to perform his prior relevant work alone established the
   significant work-related limitation of function requirement of § 12.05C.  Further, the
   Secretary has defined a severe impairment or combination of impairments as those
   which significantly limit an individual's physical or mental ability to do basic work
   activities.  The Secretary's finding that Luckey suffers from a severe combination of
   impairments also establishes the second prong of § 12.05C.

Id. at 669 (internal citations omitted).

   As described in the introduction to the Listing, one of the essential features of mental

retardation is significant deficits in adaptive functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §

12.00; See also, The Merck Manual of Diagnosis and Therapy 2259 (Mark H. Beers, M.D. & Robert

Berkow, M.D., eds., 17th ed. 1999) (defining mental retardation as "significantly subaverage

intellectual quotient with related limitations in two or more of the following: communication, self-

care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work.").[2] Also, according to the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, ("DSM-IV")(1994), one of the essential features of mental retardation is significant deficits in adaptive functioning. Id. at 39-40. Adaptive functioning refers to how effectively an individual copes with common life demands and how well he meets the standards of personal independence expected of someone in his particular age group, sociocultural background, and community setting. Id. at 40. Thus, the Regulations make clear that Listing 12.05C is a three-part test. The Introduction to section 12.00 of the Listings, section 12.00A, was revised in 2000 to state as follows:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A; 65 Fed. Reg. 50, 746, 50, 776; see also Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001) (detailing change).

The record in this case disclosed that on March 8, 2004, Mari Sullivan Walker, M.A., a Licensed Psychologist, performed a psychological evaluation of Claimant. (Tr. at 212-15.) Ms. Walker performed intellectual testing by administering the WAIS-III on which Claimant obtained a verbal IQ score of 66, a performance IQ score of 60, and a full scale IQ score of 61. (Tr. at 212.)

---

[2] "In 1992 the American Medical Association on Mental Retardation changed the definition of mental retardation to reflect adaptation to the environment and interaction with others by a person with limited intellectual functioning. Classification based on IQ alone (mild, 52 to 68; moderate, 36 to 51, severe, 20 to 35; profound, less than 20) has been replaced to that based on level of support needed." The Merck Manual of Diagnosis and Therapy 2259 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999).

On WRAT-3 testing, it was determined that Claimant read at the high school level, performed math at the sixth grade level, and spelled at the fourth grade level. (Id.) Based on Claimant's test results, Ms. Walker opined that Claimant was functioning within the mildly mentally impaired classification range. (Tr. at 215.) Ms. Walker further opined that Claimant's mental conditions resulted in only mild limitations on the ability to maintain social functioning, concentration, and pace. (Tr. at 214.) Her ability to persist was noted as normal. (Id.)

On July 19, 2004, William C. Steinhoff, Jr., M.A., a Licensed Psychologist, performed a further psychological evaluation of Claimant. (Tr. at 235-40.) Claimant reported that she did not sleep much, had a poor appetite, did not have much energy, and had problems with irritability. (Tr. at 236.) She noted that she had been depressed for two or three years. (Id.) Claimant further reported that she experienced episodes of breathing problems, as well as shaking and nervousness approximately once or twice a week. (Id.) Claimant denied current suicidal or homicidal ideation but acknowledged a history of passive suicidal ideation without any planning of attempts. (Id.) She further reported that she felt paranoid around other people. (Id.) Claimant indicated that she completed the ninth grade in school and that she attended regular classes. (Tr. at 237.) She reported that she never obtained her driver's license because she was too nervous. (Id.) Regarding her childhood, Claimant reported "no known delays during childhood in meeting major development milestones and no other childhood problems [were] reported." (Id.) Claimant reported that she was a single mother of four children ranging in age from 17 to 22 years. (Id.) She further reported a good relationship with her children. (Id.)

Mr. Steinhoff administered the WAIS-III, on which Claimant obtained a verbal IQ score of 59, a performance IQ score of 55, and a full scale IQ score of 53. (Tr. at 238.) Mr. Steinhoff noted that these test scores suggested intellectual abilities within the range of moderate mental retardation.

10

(Tr. at 238.) However, he noted that "during the evaluation she was depressed and anxious and did not appear to put forth her best effort. In addition, scores are well below predicted compared with her verbal interaction as well as reported educational and background and abilities. Scores are also below those obtained during a prior evaluation completed in 2003 as described in the Review of Records." (Tr. at 239.) Mr. Steinhoff therefore opined that Claimant's IQ scores were "an underestimate of her abilities." (Id.) On WRAT-3 testing, it was determined that Claimant read at the third grade level and performed math and spelling at the second grade level. (Id.) However, Mr. Steinhoff considered these scores, too, "to be an underestimate of her academic skills . . . and, therefore, not considered to be valid." (Id.) Mr. Steinhoff noted that Claimant was capable of managing her finances. (Tr. at 240.) Mr. Steinhoff further opined that Claimant's mental conditions resulted in moderate limitations on her ability to maintain social functioning and concentration, persistence, and pace. (Tr. at 238.)

On December 16, 2005, Claimant underwent another psychological evaluation by Mr. Steinhoff. (Tr. at 315-20.) No records however, were available for Mr. Steinhoff to review at the time of the evaluation. (Tr. at 315.) Mr. Steinhoff again administered the WAIS-III, on which Claimant obtained a verbal IQ score of 61, a performance IQ score of 59, and a full scale IQ score of 57. (Tr. at 317.) Mr. Steinhoff opined that these scores fell within the range of mild mental retardation. (Tr. at 318.) However, he determined that the scores were a "mild underestimate of her intellectual abilities." (Id.) In assessing the validity of the IQ scores, Mr. Steinhoff noted that Claimant was severely depressed with low motivation and energy level at the time of the evaluation. (Id.) He noted psychomotor retardation, as well as significant deficits in immediate and recent memory and concentration. (Id.) He therefore, opined that the "[s]cores are below predicted compared to her reported educational background and abilities as well as the fact that she has raised

11

four children independently." (<u>Id.</u>)

On WRAT-3 testing, scores indicated that Claimant read at the second grade level and performed math and spelling at the first grade level. (Tr. at 318.) Mr. Steinhoff considered these scores to be a "mild underestimate of her abilities," and noted that Claimant did not put forth her best effort and appeared to have concentration and memory problems which significantly affected her overall performance. (<u>Id.</u>) Mr. Steinhoff further opined that Claimant's mental conditions resulted in marked limitations in her ability to maintain social functioning, concentration, persistence, or pace. (Tr. at 319.)

During the evaluation, Claimant reported that she completed the ninth grade in school and attended regular classes. (Tr. at 316.) She further reported that she was never retained in any grade and quit school in the ninth grade, at the age of 15, because she was pregnant. (<u>Id.</u>) She noted no employment history. (<u>Id.</u>)

Based on the invalidity of the WAIS-III test administered by Mr. Steinhoff on July 19, 2004, the ALJ rejected a mental retardation claim. (Tr. at 16.) The ALJ explained:

> While this lady has never worked, she has fulfilled the responsible task of raising four children, has maintained a relationship with a boyfriend and functions as a housewife and mother. She has supported herself through income obtained on account of her children - via child support and Food Stamps, although those benefits are about to expire as her youngest will soon attain the age of 18. She has reported no difficulty in managing her income and paying bills appropriately.

(Tr. at 16-17.)

The ALJ further rejected Mr. Steinhoff's second test results because in the report of his December 16, 2005, evaluation, Mr. Steinhoff did "not explain the discrepancies between his own two reports and further reduces the value of his determinations." (Tr. at 17.) She acknowledged that Mr. Steinhoff did not review any medical records in connection with his second review and rejected

the second assessment "as not supported by this lady's responsible activities as a mother of four." (Id.) At steps two and three of the special technique, the ALJ determined that Claimant's impairments resulted in moderate restrictions in her ability to maintain social functioning, concentration, persistence, or pace. (Tr. at 18.)

The ALJ did not challenge Ms. Walker's validity of the IQ scores obtained in April, 2004. (Tr. at 17.) Rather, the ALJ noted that Ms. Walker's assessment of functioning in the mild mental retardation range of intelligence "seems an underestimate of this lady's capabilities." (Id.) The ALJ concluded that Claimant's "demonstrated ability to adapt to life and its necessary activities," evidences her lack of an impairment under Section 12.05. (Tr. at 19.)

Claimant first alleges that the ALJ erred in not finding that she met § 12.05C. (Doc. No. 11 at 10.) She notes that the ALJ did not challenge the IQ test scores of Ms. Walker, and therefore, asserts that she meets the criteria of § 12.05C, which requires a valid IQ score between 60 and 70. (Doc. No. 11 at 10.) She further alleges that Claimant's "impoverished lifestyle conclusively illustrates that she has significant deficits in adaptive functioning." (Id.) The Commissioner asserts that Claimant has not demonstrated that she has significant limitations of adaptive functioning. (Doc. No. 12 at 6-7.)

The Court agrees with the Commissioner. As the ALJ noted, Claimant essentially raised four children on her own, with the assistance of subsidized monies in the form of welfare and food stamps. She maintains a close relationship with her children today. This accomplishment demonstrates that Claimant was able to care for herself and her children, manage money, and build strong personal relationships with each of her children. The evidence indicates that Claimant dropped out of school at the age of 15 because she was pregnant. Consequently, from the ages of her children, it appears that Claimant was capable of caring for and raising four small children, all

under the age of eight, prior to the age of 22. This indicates that she did not have any adaptive deficits prior to the age of 22. Additionally, the psychological evaluations of record reveal that Claimant reported a normal childhood without any significant developmental day, that she attended regular classes in school and was never retained in any grade, and that she did not have any disciplinary problems while in school. The reason she dropped out of school was due to her pregnancy and not because of any academic or other difficulties at that time. Though Claimant has no past relevant work, there is no indication in the record that her intellectual functioning precluded her from obtaining employment. The evidence of record does not demonstrate significant deficits of adaptive functioning. Accordingly, based on the foregoing, the Court finds that Claimant has failed to demonstrate that she meets the criteria of § 12.05C.

Claimant also argues that the ALJ erred in not finding that she met the criteria of § 12.05D. As stated above, the ALJ determined that Claimant's impairments resulted in no more than moderate limitations on her ability to perform activities of daily living and maintain social functioning, concentration, persistence, or pace. (Tr. at 18.) The ALJ noted that Claimant successfully raised four children on her own, continues to operate her household, and maintains a relationship with a boyfriend. (Id.) Though Claimant has limitations in her ability to concentrate and maintain attention, the ALJ noted that Claimant continued to accomplish her daily tasks. For the reasons set forth above, the Court finds that the ALJ's decision regarding Claimant's activities of daily living, social functioning, concentration, persistence, and pace is supported by substantial evidence. Accordingly, Claimant has not demonstrated the requisite marked limitations required under § 12.05D.

**Motion for Remand.**

Claimant has also submitted new evidence to the Court in the form of Claimant's school records from the Wyoming County Board of Education. (Doc. No. 13, Exhibit 1.) Claimant asserts

that these records demonstrate significant limitations in adaptive functioning prior to the age of 22. The records reflect Claimant's grades in the eight grade of school. The scores consist primarily of letter grades "D" and "C," with a few "B's" and a couple of "F's." (Id.)

To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[3] In Borders, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence.  Id.

First, the evidence pertains to the period of time prior to Claimant attaining the age of 22.

---

[3] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in *Borders* provides the proper test in this circuit for remand of cases involving new evidence.  This court will apply the standard set forth in Borders in accordance with the reasoning previously expressed in this district:

> The court in *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent  *Borders* four-part inquiry is superseded by the standard in 42 U.S.C. 405(g).  The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." However, Borders has not been expressly overruled.  Further, the Supreme Court of the United States has not suggested that *Borders*' construction of §  405(g) is incorrect.  Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent *Borders* inquiry.

*Brock v. Secretary, Health and Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992) (citations omitted).

However, the evidence is only a listing of grades for one year and does not necessarily reflect Claimant's level of intellectual functioning at the time. Therefore, the Court is unable to say that the evidence is not entirely relevant. Second, the evidence does not appear to be material because it does not in any way dispute the findings above regarding Claimant's adaptive deficits. The evidence does not change the fact that Claimant successfully raised four small children prior to the age of 22. Furthermore, the evidence is but only for a snapshot in time of one year of school. The evidence does not contain any comments or assessments regarding Claimant's intellectual functioning.

Third, as stated above, the report is dated prior to the date of the ALJ's decision and the Appeals Council's denial of review in this case. Therefore, to the extent that the evidence existed prior thereto, Claimant has not shown good cause for the failure to submit this evidence when the claim was before the Commissioner. Though Claimant indicates that she twice requested this information, she does not explain why the information suddenly was produced. Claimant had a duty to submit the evidence to the ALJ and to ensure it was part of the record. Finally, <u>Borders</u> requires that the Claimant present at least a general showing of the new evidence to the Court. Claimant has attached the new medical evidence as an Exhibit to her Motion for Remand. However, the Claimant has failed to satisfy all four factors of <u>Borders</u>, particularly the second factor, and, therefore, remand would be inappropriate. The Court finds that the Commissioner's decision is  supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Remand (Doc. No. 13.) is **DENIED**, Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 11.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 12.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**,

16

and this matter is **DISMISSED** from the docket of this Court.

       The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

       ENTER: March 31, 2008.

R. Clarke VanDervort
United States Magistrate Judge